

**FILED**

OCT 13 2010

CLERK'S OFFICE
U.S. DISTRICT COURT
ANN ARBOR, MI

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TODD D. DENNIS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Case Number: 10-10099

DAVID M. LAWSON
UNITED STATES DISTRICT COURT
JUDGE

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 8) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 11)

Plaintiff, Todd D. Dennis, through his counsel, appeals the Social Security Commissioner's decision denying him disability insurance benefits. This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

### I. Background

On November 19, 2007, Plaintiff filed an application for disability insurance benefits. (Tr. 87). Plaintiff claimed disability as of July 12, 2006 due to a shoulder injury he suffered at his former job as a school custodian. (Tr. 89, 113-114). Plaintiff was operating a floor buffer when he lost control of the buffer and "the machine flung [him] to the ground on [his] shoulder." (Tr. 113).

Plaintiff's application was initially denied on December 7, 2007. (Tr. 56). The Social

Security Agency denied his application for benefits after determining that Plaintiff's condition was not expected to remain severe enough for twelve months in a row such that Plaintiff could not work. (Tr. 56). Plaintiff filed a timely request for an administrative hearing. (Tr. 82).

Plaintiff appeared, with counsel, for an administrative hearing before Administrative Law Judge Daniel G. Heely on February 10, 2009. (Tr. 25). On June 15, 2009, ALJ Heely issued a decision affirming the denial of benefits. (Tr. 7).

In his decision, ALJ Heely applied the five-step sequential analysis set out in the Social Security Agency's regulations to determine whether plaintiff qualified for benefits. 20 C.F.R. § 404.1520(b)-(f). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 12, 2006. (Tr. 12). At step two, the ALJ found that Plaintiff had the severe impairment of "status post right shoulder surgeries." (Tr. 12). At step three, the ALJ decided that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12). At steps four and five, the ALJ concluded that Plaintiff cannot perform his past relevant work but he has the residual functional capacity to perform light work, with restrictions to accommodate his limited ability to use his shoulder. (Tr. 12).

After receiving an unfavorable decision from the ALJ, Plaintiff sought review of the ALJ's decision by the Appeals Council, which affirmed the unfavorable decision. (Tr. 1-4). Subsequently, Plaintiff filed the instant complaint for judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

The Honorable David M. Lawson referred this case to this court for the resolution of all non-dispositive motions and the issuance of a Report and Recommendation. (Doc. No. 3).

The parties have filed cross-motions for summary judgment. This case is now ripe for adjudication.

**II. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

**III. Analysis**

Plaintiff first argues that the ALJ erred when he failed to discuss or mention medical evidence by Dr. Farjo, who performed Plaintiff's third shoulder surgery, and Dr. Geiringer, who treated Plaintiff at the behest of workers' compensation. (Doc. No. 8, Pl.'s MSJ 9-10). Plaintiff also

3

complains that the ALJ "consistently misstated the opinions" of Dr. Janda, who performed Plaintiff's first two shoulder surgeries. *Id.* at 10. Plaintiff further argues that the ALJ should have discussed Dr. Janda's opinion that Plaintiff should apply for Social Security benefits. *Id.* at 9.

The Commissioner acknowledges that the ALJ did not mention Plaintiff's third shoulder surgery in his opinion but argues that this omission is not fatal because the ALJ is not required to discuss every piece of evidence so long as the record as a whole supports the ALJ's decision. (Doc. 11, Def.'s MSJ 15). The Commissioner further argues that Dr. Farjo's treatment notes indicate that the third shoulder surgery went well, Plaintiff was recovering nicely, and the only restriction Dr. Farjo placed on Plaintiff was that Plaintiff was not to work for one month after December 30, 2008. *Id.* at 16. With respect to Dr. Geiringer, the Commissioner argues that the ALJ cited Dr. Geiringer's reports, even if the ALJ did not discuss Dr. Geiringer's opinions by name, and from May 2007 to July 2007, Dr. Geiringer repeatedly cleared Plaintiff for work. *Id.* at 15. The Commissioner also argues that the ALJ discussed Plaintiff's care under Dr. Janda and incorporated many of Dr. Janda's recommendations in to his opinion regarding the type of work Plaintiff is able to perform. *Id.* at 16-17.

It is undisputed that the ALJ did not discuss Plaintiff's third shoulder surgery, performed by Dr. Farjo. However, this oversight, if it was an oversight, is not reversible error. Dr. Farjo's most recent treatment records indicate that when he saw Plaintiff four weeks after surgery, on December 30, 2008, Plaintiff's pain was "severe" but his wounds were "healing nicely." (Tr. 322). Dr. Farjo prescribed physical therapy and instructed Plaintiff to remain off of work until the next follow-up appointment, which was scheduled for four weeks later. (Tr. 322). Dr. Farjo also "strongly advised [Plaintiff] . . . to do his home exercise program and discontinue his sling." (Tr. 322). Plaintiff did

not submit any additional treatment records from Dr. Farjo or any other health care professional indicating that his third shoulder surgery did not have a successful outcome. In addition, the ALJ was well-apprised of Plaintiff's third shoulder surgery. The ALJ had Dr. Farjo's treatment records and he heard testimony from Plaintiff that he had three surgeries and was possibly a candidate for a shoulder replacement in the next five years. (Tr. 30).

The ALJ is not required to comment on every piece of evidence in the record. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1998). Moreover, the court notes that Dr. Farjo's treatment records documenting Plaintiff's third shoulder surgery hardly support Plaintiff's disability claim. The mere fact that Plaintiff had a third shoulder surgery is not sufficient to prove disability. According to Dr. Farjo, Plaintiff was healing well and would be entering physical therapy. (Tr. 322). Nothing from these records indicate that Plaintiff's third surgery was anything but a success and, therefore, the ALJ's failure to comment on the third surgery was not reversible error because there is no evidence that after the third shoulder surgery Plaintiff was unable to perform sedentary work, as found by the ALJ. The record as a whole supports the ALJ's conclusion that Plaintiff is not disabled and, therefore, the ALJ should not be reversed based on this omission.

Turning now to Plaintiff's complaints about the ALJ's treatment of Dr. Geiringer's records, which Plaintiff argues "are of great significance both in establishing the severity of Mr. Dennis' shoulder condition and also . . . showing that this was one continuous disability and not, as the ALJ contended, separate disability periods," the court finds that the ALJ both considered Dr. Geiringer's records and drew the appropriate conclusion that Plaintiff is not permanently disabled from his records.

5

In discussing the treatment Plaintiff received after his second shoulder surgery, the ALJ commented that the doctor had a hard time examining him on January 3, 2008 due to Plaintiff "guarding" his shoulder and Plaintiff's complaints of pain. (Tr. 15). Dr. Geiringer is the doctor who examined Plaintiff on January 3, 2008 and, even though the ALJ did not refer to him by name, it is apparent that the ALJ read and considered the medical evidence submitted from Dr. Geiringer. (Tr. 15, 234-235).

In addition, Dr. Geiringer's records do not support a finding of permanent disability. After examining Plaintiff on multiple occasions, Dr. Geiringer returned Plaintiff to work on July 30, 2007. (Tr. 174). In August 2007, after Plaintiff's attempt to return to work was not successful, Dr. Geiringer opined that it was likely that Plaintiff "will not be able to return to the type of moderate to heavy physical work he was previously accustomed to performing." (Tr. 163). Dr. Geiringer never ruled out the possibility that Plaintiff could return to some type of work, however. The ALJ's finding that Plaintiff can perform some types of work is, therefore, consistent with Dr. Geiringer's treatment records. Accordingly, the ALJ did not err in his reliance and interpretation of Dr. Geiringer's treatment records.

Plaintiff also argues that the ALJ misstated Dr. Janda's opinions and should have discussed Dr. Janda's suggestion that Plaintiff apply for Social Security benefits. Plaintiff's complaints relate to the following paragraph in the ALJ's decision:

> The medical record shows good improvement following surgery, but continued to report pain symptoms to his doctor. Physical examinations showed limited range of motion and strength deficits on testing. However, his surgeon, David Janda, M.D. observed on February 16, 2007 that the claimant was "falling into a bit of a chronic pain syndrome" and recommended continued use of medications and eventual referral to a chronic pain management clinic [Exhibit IOFI5]. By March 23, 2007 the claimant demonstrated much improved range of motion and reduced pain symptoms.

6

Dr. Janda advised that the claimant could expect to have continuing but improving pain symptoms for up to a year following surgery, and on that date discharged the claimant from his care, feeling that the claimant had reached maximum medical benefit through Dr. Janda's office [Exhibit IOF12]. Prior to this date Dr. Janda had recommended that the claimant remain off work. However, at the March 23, 2007 no such recommendation was made, suggesting that the claimant had the ability to return to work. In a subsequent treatment note dated September 7, 2007, Dr. Janda reported that the claimant was "symptom-free" for a period of time and had returned to work for about 2 weeks, then aggravated his shoulder, reporting diffuse pain, night pain, and increased pain with activities. Dr. Janda opined that the claimant was not able to return to his former level of work but should be retrained in a less strenuous job. It is noted that Dr. Janda did not suggest that the claimant could not return to any type of work [Exhibit 10F11].

Plaintiff takes issue with the ALJ's finding that Plaintiff could have returned to work after March 23, 2007, given that Dr. Janda did not include a work restriction in his treatment records. There is no work restriction in Dr. Janda's treatment notes from March 23, 2007, even though Dr. Janda put work restrictions in all of his other treatment notes. (Tr. 247). It is true that Dr. Janda referred Plaintiff to the pain clinic and he also stated that Plaintiff had "reached maximum medical benefit though our office." (Tr. 247). Because there was no work restriction included in treatment notes, the ALJ's conclusion that Plaintiff was able to return to work is supported by the evidence. The fact that Dr. Janda, on the same day, also referred Plaintiff to the pain clinic does not undercut the ALJ's conclusion. The ALJ simply stated that there was no work restriction in the treatment records and drew the inference that Plaintiff could return to work at that time. The ALJ goes on to say that Plaintiff was symptom free for a period of time until he returned to work and reinjured his shoulder. The ALJ fully and accurately discussed Dr. Janda's treatment notes, and his inferences are supported by the medical evidence. The ALJ did not err.

The ALJ also did not err by not discussing Dr. Janda's recommendation that Plaintiff apply for social security benefits in March of 2008. In a treatment note dated March 14, 2008, Dr. Janda

7

opined that Plaintiff should apply for social security benefits because "he cannot use his right upper extremity for any significant tasks at work." (Tr. 237). The ALJ did not mention Dr. Janda's recommendation in his opinion. As discussed above, the ALJ is not required to comment on every piece of evidence in the record. *Walker*, 884 F.2d at 245. Also, Dr. Janda's opinion that Plaintiff should apply for social security benefits is not binding on the ALJ in any manner. It is up to the medical professionals to document a claimant's medical conditions and it is the ALJ's job to interpret the medical evidence, apply the relevant laws and regulations, and determine whether the claimant is disabled under the Social Security Act. The fact that Dr. Janda thought that Plaintiff should apply for benefits has no bearing on the ALJ's analysis. Therefore, it was not error to not discuss it.

Next, Plaintiff argues that the ALJ erred by finding that Plaintiff was not continuously disabled from the date of his injury in July 2006 until his third surgery in December 2008. (Doc. No. 8, Pl.'s MSJ 11). Plaintiff contends that he was completely unable to work from July 2006 to December 2008. *Id.*

The Commissioner responds that, even factoring in reasonable periods of recovery after the surgeries, Plaintiff could have performed at least sedentary work at different points in time between July 2006 and December 2008. (Doc. No. 11, Def.'s MSJ 17). The Commissioner concedes that the medical evidence indicates that Plaintiff could not have performed his past work but argues that does not make Plaintiff disabled under the Social Security Act. *Id.* at 18.

In the ALJ's decision, he writes the following regarding whether Plaintiff has met the twelve-month duration requirement:

> In summary, following surgery a reasonable period of recovery is expected, and

> consistent with Dr. Janda's findings of March 23, 2007 the claimant was able to return to work, perhaps not at his prior job, but no preclusion from all work was indicated. The claimant's residual impairment from the first surgery ended as of March 23, 2007, less than 12 months duration as required by 20 CFR 404.1509 and 416.909. Also, after the second surgery in October, 2007, medical improvement occurred and by May 2008 he was able to at least perform sedentary work according to his doctor's statement. The sedentary limitation was expected to last 2 months, which would have been July 2008, indicating that he could then return to work requiring greater exertional demands [Exhibit IIF11]. Again, the 12 month durational requirement was not met.

(Tr. 15-16).

The ALJ's findings are supported by substantial evidence. The ALJ thoroughly discusses the medical evidence submitted by Plaintiff regarding his ability to work from July 2006 to December 2008. There are periods where Plaintiff improved enough to, at minimum, do sedentary work and he was even cleared in July 2007 to return to his job as a custodian. (Tr. 174-175, 187). After his second shoulder surgery, Plaintiff was again cleared by Dr. Lennox for sedentary work. (Tr. 272). There is no period of twelve months during which Plaintiff has presented evidence that he was completely precluded from working. Accordingly, the ALJ properly interpreted the evidence presented and reached the conclusion that Plaintiff had not met the duration requirement. The ALJ's finding should be affirmed.

## IV. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for remand be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

_____
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

Dated: _____